**In re Richard G. SWITZER and Betsy R. Switzer, Debtors.**

**Bankruptcy No. SA 91–40105 JW.**

United States Bankruptcy Court,
C.D. California.

Sept. 10, 1992.

William C. Starrett, II, Neben & Starrett, Newport Beach, Cal., for Charles W. Daff, Chapter 7 Trustee.

Stuart I. Koenig, Dennis, Shafer, Fennelly & Creim, Los Angeles, Cal., for Lea Industries and Design Horizon, Joint Parties To Chapter 7 Trustee's Objection.

Michael J. Bartlett, Mission Viejo, Cal., for debtors.

## MEMORANDUM OF DECISION

JOHN J. WILSON, Bankruptcy Judge.

The Chapter 7 Trustee (the "Trustee") objects to Richard G. and Betsy R. Switzer's (the "Debtors") claim that certain cash assets in retirement plans are exempt from creditor claims. Debtors contend that three accounts at Fidelity Investments ("Fidelity") and a fourth account at Merrill Lynch are pension plans that may be excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2). In the alternative, Debtors argue that these accounts are retirement plans that are exempt from creditors' claims under Cal.Civ.Proc.Code § 704.115.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1334(a). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

## STATEMENT OF FACTS

On October 21, 1991, the Debtors filed a voluntary chapter 7 petition. Debtors listed interests in a 401K, a rollover Keogh, a Merrill Lynch IRA, and in two individual retirement accounts ("IRAs"), one at Merrill Lynch and the other at Fidelity, as exempt retirement plans under Cal.Civ. Proc. § 704.115. The Trustee objected to Debtors' claimed exemptions and a hearing was held on the Trustee's objections. In their hearing brief, the Debtors contended, for the first time, that their pension plans were created under federal law and could be excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2). A continued hearing was set to allow the Debtors an additional opportunity to present evidence to support their claimed right of exclusion or exemption of the pension plans from the bankruptcy estate.

Evidence presented at the initial hearing shows that in 1963, Richard G. Switzer ("Switzer") was employed by United Furniture ("United"). During that year, United started a pension plan for Switzer under the Self–Employed Individuals Retirement Act of 1954, as amended by the Individual Tax Retirement Act of 1962, 26 U.S.C. § 401(a) (the "United Keogh").[1] United made contributions to the United Keogh on behalf of Switzer until 1972 when United was sold to Burlington Industries ("Burlington") and Switzer became an employee of Burlington. Thereafter, Switzer received a distribution of all funds in the United Keogh which he deposited with Fidelity. Debtors' schedules identify this Fidelity account as a 401K plan.

When Switzer went to work for Burlington he became a member of the Burlington retirement system and profit sharing plan ("Burlington Plan"). Burlington made regular contributions to the Burlington Plan on behalf of Switzer from 1972 to 1984 when Burlington sold the furniture business where Switzer was employed and terminated Switzer's membership in the Burlington Plan. On November 27, 1984, Burlington made a lump sum distribution from the Burlington Plan to Switzer in the amount of $167,897.34. Switzer deposited the Burlington Plan monies into a Fidelity account. Debtors' schedules describe this Fidelity account as a "ROLLOVER KEOGH FROM BURLINGTON INDUSTRIES".[2]

Debtors did not receive any plan document from Fidelity stating that the funds from the United Keogh or the Burlington Plan were placed into Keogh plans or IRAs. Nor did the Debtors make any inquiry of Fidelity at the time the monies were deposited or thereafter as to whether monies from the United Keogh and Burlington Plan were placed in Keogh plans. Debtors have periodically transferred monies in each of the Fidelity accounts from one type of investment fund to another. As of the date of bankruptcy, the Fidelity account which Debtors opened with the distribution from the United Keogh contained $161,574, and the Fidelity account which was started with distribution from the Burlington Plan contained $422,562.

In addition, Debtors have two IRAs: one opened in 1985 with Fidelity and the other opened in 1988 with Merrill Lynch. The IRAs were started by Debtors independent of their other pension plans. At the time of bankruptcy, the IRAs contained a combined total amount of $16,021.

Switzer was sixty years old at the time of the continued hearing. He is currently employed as Vice–President of Sales for Universal Furniture with an annual salary of $120,000. There is, however, a strong probability that Switzer's job with Universal could be eliminated do to the recession

---

1. Debtors' Exhibits in Opposition to Chapter 7 Trustee's Objection to Claim of Exemption, Ex. 1, Pension Plan under the Self–Employed Individuals Tax Retirement Act of 1962 Funded with Policies Issued By New York Life Insurance Company and Agreement of New York Life Insurance Company at 7, Article XIII, and Letter from the U.S. Treasury Department, dated November 21, 1963.

2. Debtors' Exhibits in Opposition to Chapter 7 Trustee's Objection to Claim of Exemption, Ex. 2, check dated November 26, 1984, and Letter dated November 27, 1984 from Burlington Industries, Inc.

in the furniture industry. In addition, Switzer has a chronic skin condition and recurring circulatory problem with his legs that affect his mobility. As a result, Switzer indicated that he would like to retire as soon as this bankruptcy can be resolved. Switzer's spouse, Betsy R. Switzer, is thirty-two years old and was unemployed at the time of the first hearing.

At the continued hearing on the Trustee's objection, Debtors did not provide any additional evidence to support their claimed right to exclude their retirement plans from the bankruptcy estate.

## ISSUES

1. Whether any of the retirement plans are excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2) of the Bankruptcy Code?

2. Whether Cal.Civ.Proc.Code § 704.115 allows the Debtors to exempt any of the retirement plans?

## DISCUSSION

### I. DEBTORS' CLAIMED EXCLUSION OF RETIREMENT ASSETS FROM THE BANKRUPTCY ESTATE

The filing of a petition under the Bankruptcy Code creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The provisions of § 541(a)(1) are to be liberally construed. *United State v. Whiting Pools, Inc.*, 462 U.S. 198, 204, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). An exception to the broad inclusion requirements of § 541(a)(1) is found in § 541(c)(2), which provides that "[a] restriction on the trans-

fer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." Any right of exclusion that the Debtors may claim is dependent on legal and equitable rights that nonbankruptcy law accords retirement assets at the time bankruptcy is commenced. *In re Polycorp Associates*, 47 B.R. 671, 673 (Bankr. N.D.Cal.1985); *Collier on Bankruptcy*, 4 ¶ 541.01 at 541–6 and ¶ 541.06 at 541–27 (15th ed. 1985).[3]

Certain types of pension plans, such as ERISA qualified pension plans, may be excluded from the bankruptcy estate because they contain "applicable nonbankruptcy law" restrictions on alienation. *Patterson v. Shumate*, — U.S. —, —, 112 S.Ct. 2242, 2247, 119 L.Ed.2d 519 (1992). In the context of applying nonbankruptcy ERISA law to § 541(c)(2), a restriction on transfer is enforceable against the trustee in bankruptcy because the anti-alienation provision of an ERISA qualified plan is enforceable against a general creditor outside of bankruptcy. *In re Lucas*, 924 F.2d 597, 603 (6th Cir.1991); *In re Moore*, 907 F.2d 1476, 1480 (4th Cir. 1990); *In re Threewitt*, 24 B.R. 927, 929 (Bankr.D.Kan.1982).

Keogh plans are created pursuant to 26 U.S.C. § 401(a) of the Internal Revenue Code ("I.R.C."), and must include a restriction against alienation to qualify as a Keogh plan. 26 U.S.C. § 401(a)(13).[4] In the present dispute, Debtors contend that their Fidelity accounts are Keoghs or IRAs that, like ERISA plans, contain enforceable nonbankruptcy law restrictions against alienation that permit them to be excluded from the bankruptcy estate. On this issue,

---

3. To the extent an interest is limited in the hands of the debtor, it is equally limited as property of the estate ...

Although paragraph [§ 541(a)] (1) includes choses in action and claims by the debtor against others, it is not intended to expand the debtor's rights against others beyond what rights existed at the commencement of the case....

4 Collier on Bankruptcy ¶ 541.06 at 541–27 (15th ed. 1988) (footnotes omitted).

4. 26 U.S.C. § 401(a)(13) provides:
*(13) Assignment and Alienation.*—

*(A) In general.*—A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated. For purposes of the preceding sentence, there shall not be taken into account any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment made by any participant who is receiving benefits under the plan unless the assignment or alienation is made for purposes of defraying plan administration costs....

Debtors have the burden of proof to demonstrate by a preponderance of the evidence that their retirement plans contain enforceable anti-alienation restrictions that would permit them to be excluded from the bankruptcy estate under § 541(c)(2). *In re Leimbach,* 99 B.R. 796, 798 (Bankr. S.D.Ohio 1989).

■ Debtors did not present sufficient evidence to find that any of their pension plans contained anti-alienation provisions. On cross-examination by the Trustee, Switzer testified that monies from the United Keogh were distributed to him from his United Keogh prior to bankruptcy. Those monies were then deposited by the Debtors into a separate Fidelity account in Debtors' name and under Debtors' control. No plan documents were provided to the Debtors by Fidelity at the time the monies were deposited nor thereafter that demonstrate Fidelity placed the United Keogh monies into another Keogh retirement plan that contains an enforceable restriction on transfer provision. No inquiries were ever made by the Debtors to Fidelity as to the type of account into which the monies from the United Keogh were placed or whether there were any restrictions on transfer. Lastly, Fidelity never indicated to the Debtors that their funds from the United Keogh were safe from creditor claims.

With respect to the Debtors' rollover Keogh from the Burlington Plan, copies of the distribution check and the accompanying letter from Burlington show that the funds were distributed out of the Burlington Plan sometime after November 26, 1984. As was the case with the United Keogh, Switzer placed the Burlington Plan monies into a separate account with Fidelity and received no plan documents. Nor

did the Debtors communicate with Fidelity concerning the nature of the account into which the Burlington Plan rollover monies were placed and whether there were any restrictions on transfer.

Finally, Debtors presented no evidence of any anti-alienation provisions in either of the pension plans Debtors claimed as IRAs.

This Court finds that the Debtors failed to prove by a preponderance of the evidence that their retirement plans contained restrictions on transfer provisions. This Court does not therefore reach the issue of whether restrictions against transfers contained in Keoghs or IRAs are enforceable for purposes of exclusion under § 541(c)(2). The assets in Debtors' plans are part of the chapter 7 estate. The Debtors' right to retain any of the funds in the their retirement plans is dependent on applicable state law exemptions that may be claimed for retirement plans.

## II. EXEMPTIONS UNDER CALIFORNIA LAW

Having determined that the retirement plans are not excluded from the bankruptcy estate under § 541(c)(2), this Court turns next to the issue of whether the plans may be claimed as exempt from creditor's claims under California law. The Bankruptcy Code permits individual debtors to exempt property from the bankruptcy estate under state law. 11 U.S.C. § 522(b)(2)(A).[5] Interests in Keoghs and IRAs may be exempted under California law, but only to the extent necessary to provide support for the debtor and the debtor's spouse in retirement. Cal.Civ. Proc.Code § 704.115 (West 1987) ("C.C.P. § 704.115").[6] Bankruptcy Rule

---

5. Bankruptcy Code 11 U.S.C. § 522(b)(2)(A) provides in pertinent part:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.

. . . .

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the

place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition, or for a longer portion of such 180–day period than in any other place; . . .

6. Section 704.115 of the California Code of Civil Procedure provides:

(a) As used in this section, "private retirement plan" means:
(1) Private retirement plans, including, but not limited to, union retirement plans.

4003(c)[7] provides that the party objecting to a claimed exemption has the burden of proof to establish that an exemption is not properly claimed.

This Court need not reach the issue of whether the Trustee has met his burden in this case because the trustee concedes that all of Debtors' retirement plans, including both retirement plans that Debtors claim are Keoghs, are IRAs that may be exempted from creditor claims pursuant to the terms and limitations of C.C.P. § 704.115.

■ IRAs may be exempted from creditor claims pursuant to C.C.P. § 704.-115(a)(3).[8] But any exemption of IRAs is limited by the terms of § 704.115(e)[9] to sums "reasonably necessary" to support a debtor and debtor's spouse in retirement. Trustee contends that none of the funds in Debtors' IRAs are reasonably necessary for Debtors' retirement. In analyzing whether sums Debtors seek to exempt are reasonably necessary for retirement, all of the Debtors' circumstances present and future must be taken into account *In re Kochell*, 732 F.2d 564, 566 (7th Cir.1984) (citing *In re Taff*, 10 B.R. 101, 107 (Bankr. D.Conn.1981)), including potential disruption in earning capacity and the Debtors' ability to regenerate retirement funds. *In re Fisher*, 63 B.R. 649, 651 (Bankr.W.D.Ky. 1986) (citing *Kochell*, 732 F.2d at 566).

Health care costs are an inevitable consequence of age that must also be included in the analysis. *In re. Dalaimo*, 88 B.R. 268, 272 (Bankr.S.D.Cal.1988). Based on these criteria and the facts of a particular case, courts have considerable discretion in deciding what amounts are reasonably necessary for a debtor's retirement.

In the case of *In re Dalaimo*, the court held that a retired debtor and his spouse were entitled to exempt all of the monies contained in an IRA after considering the debtor's present need for the money and ability to rebuild IRA funds. *Id.* at 272. A key factor for the *Dalaimo* court's decision was the debtors' inability to generate replacement funds for their retirement account. *Id.* In *In re Montavon*, 52 B.R. 99, 103 (Bankr.D.Minn.1985), the court made a similar analysis, but reached the opposite conclusion, finding debtors' IRA not exempt due to the relatively young age of the debtors, and the ability to meet both their basic needs and replenish retirement assets from current income. The *Montavon* court distinguished between a young debtor seeking to exempt IRAs and an older debtor nearing retirement, finding that where a debtor is elderly, has limited employment prospects and faces an uncertain future financial status, relatively large sums of a pension plan could be found to be reasonably necessary for support of the debtor in

(2) Profit-sharing plans designed and used for retirement purposes.

(3) Self-employed retirement plans and individual retirement annuities or accounts provided for in the Internal Revenue Code of 1954 as amended, to the extent the amount held in the plans, annuities, or accounts do not exceed the maximum amounts exempt from federal income taxation under that code.
. . . .
(e) Notwithstanding subdivisions (b) and (d), except as provided in subdivision (f), the amounts described in paragraph (3) of subdivision (a) are exempt only to the extent necessary to provide for the support of the judgment debtor when the judgment debtor retires and for the support of the spouse and dependents of the judgment debtor, taking into account all resources that are likely to be available for the support of the judgment debtor when the judgment debtor retires. In determining the amount to be exempt under this subdivision, the court shall allow the judgment debtor such additional amount as is necessary to pay any federal and state income

taxes payable as a result of the applying of an amount described in paragraph (3) of subdivision (a) to the satisfaction of the money judgment.

Debtors' schedules claimed exemptions for Keoghs and IRAs only. No evidence was introduced to indicate that the plans were private retirement or profit-sharing plans at the time of bankruptcy pursuant to § 704.115(a)(1) or (2). This Court therefore concerns itself only with the terms and provisions of § 704.115(a)(3) and (e).

7. Bankruptcy Rule 4003(c) provides:

(c) *Burden of Proof.* In any hearing under this rule, the objecting party has the burden of proving that the exemptions are not properly claimed. After hearing on notice, the court shall determine the issues presented by the objections.

8. See supra, n. 6.

9. See supra, n. 6.

retirement. *Id.* at 103 (citing *In re Donaghy,* 11 B.R. 677, 679 (Bankr.S.D.N.Y. 1981)).

■ In the present dispute, Trustee contends that substantially all of the Debtors' retirement plans can be regenerated from Mr. Switzer's annual income of $120,000 in the time remaining before his retirement. This Court disagrees. Trustee has the burden of proving that sums claimed as exempt are not necessary for the Debtors' retirement. *Fisher,* 63 B.R. at 651. Exemption statutes are to be liberally construed in favor of the debtor. *Id.* If risks of future disruption in Debtors' income arising from Switzer's unstable employment situation and inability to obtain alternative employment, current and future medical costs due to advanced age, and Debtors' tax obligations are taken into account, Debtors' do not have the ability to rebuild their retirement assets in the short amount of time before retirement.

Switzer has approximately five years until retirement. Switzer has, however, testified that he intends to retire as soon as this bankruptcy is concluded due to a skin condition and circulatory problem in his legs that make it increasingly difficult for him to travel in his capacity as the Vice–President of Sales for Universal Furniture. Switzer also testified that there is a distinct possibility that he will lose his job well before he can retire at age sixty-five as a result of layoffs by his employer. Given the fact that Switzer is sixty years old, his opportunity to obtain alternative employment if his job is eliminated is limited at best.

There is also little chance that the Debtors will be able to regenerate their retirement assets from Switzer's salary. Debtors' after-tax monthly income is approximately $6,500. Monthly expenses currently exceed $8,300. Debtors have testified that their residence is for sale and that they expect to break even on the sale. If Debtors eliminate their mortgage payments and concurrent housing expense through the sale of their home (monthly payments on a vacation home have previously been eliminated as a result of fore-closure), and reduce by half their transportation costs, monthly expenses amount to $2,258.59. Additionally, Switzer has testified that he has medical expenses of $750 per a month as a result of his skin condition which is not covered under his health insurance plan. Adding in a monthly housing allowance of $2,000, as suggested by the Trustee, Debtors total after tax monthly expenses amount to $5,008.59.

Any surplus that the Debtors might otherwise generate for their retirement plans through a reduction in expenses will have to be used to pay taxes that may not be dischargeable and might have to be paid in full in the near future. Debtors owe $26,535.77 in back taxes to state and federal taxing agencies for the years 1990 and 1991. Debtors have not had any of their 1992 state and federal personal income taxes withheld from Switzer's paychecks in an effort to pay their monthly expenses while they sell their home.

This Court does not, however, find that all of Debtors' retirement funds are reasonably necessary for the Debtors' retirement. While C.C.P. § 704.115 permits the exemption of retirement funds reasonably necessary for support of the debtor and the debtor's spouse in retirement, Debtors have taken the position that the funds should be amortized over the life expectancy of Switzer only, thus eliminating the need for the Debtors' retirement assets to support both spouses. Mrs. Switzer is thirty-two years old, has a college degree, and is presently seeking employment. There is nothing to suggest that Mrs. Switzer will not be able to maintain a reasonable living standard for herself through alternative sources of income. Consequently, the income needs of Mrs. Switzer need not be taken into account.

With regard to funds reasonably necessary to maintain Switzer in retirement, the evidence indicates his life expectancy is approximately eighteen years. Making the assumption that Switzer retires in two years and is allowed to exempt $500,000 at a 5% rate of interest per annum, Debtors can expect such a retirement fund to increase to $551,250. This sum, amortized

over Switzer's life expectancy of eighteen years, excluding interest, will provide $30,625 per year for the support of Switzer in retirement. In addition, Switzer can expect to receive approximately $1000 per month from Social Security for a total pre-tax income of $40,625. This amount is considerably less than the Debtors' current income, but given the facts of this case, the Debtors should enjoy a reasonable standard of living during Switzer's retirement. This Court therefore finds that the sum of $500,000 is reasonably necessary for the Debtors' retirement. Correspondingly, Debtors' claimed exemption for the remaining balance of their retirement funds in the amount of $100,157 is denied.

## CONCLUSION

Debtors' have failed to meet their burden of proof to demonstrate by a preponderance of the evidence that their retirement plans contain enforceable restrictions on alienation that would permit their plans to be excluded from the bankruptcy estate under § 541(c)(2). The retirement plans are property of the bankruptcy estate, but may be exempted from the estate pursuant to C.C.P. § 704.115(a)(3) and (e) as IRAs. This Court holds that funds in the Debtors' retirement accounts are reasonably necessary for the Debtors' retirement to the extent of $500,000. The balance of Debtors' retirement funds in the amount of approximately $100,157 are not reasonably necessary for the Debtors' retirement, and may not be exempted from creditors' claims. The Trustee shall recover from Debtors and the custodian or trustee of Debtors' retirement plans all sums in excess of $500,000.

The Court's findings of fact and conclusions of law are contained in this Memorandum of Decision. The Trustee shall prepare a separate order sustaining in part and denying in part the objections to the claims of exemption.