SNEED, Circuit Judge:
Appellant Howard M. Ehrenberg (“Ehrenberg”), Chapter 7 bankruptcy trustee for Max Moses (“Debtor Moses”) and Marlene Moses (collectively the “Debtors”), appeals from the decision of the Bankruptcy Appellate Panel (“BAP”) which concluded that Debtor Moses’ Keogh Plan (“Keogh Plan” or “Plan”) was excluded from the bankruptcy estate.
Appellees and cross-appellants Southern California Permanente Medical Group and the Retirement Committee for the Southern California Permanente Medical Group Retirement Plan (collectively “SCPMG”) cross-appeal from the decision of the BAP which concluded that Debtor Moses’ Keogh Plan did not contain an enforceable anti-alienation provision under federal law.
We hold that, pursuant to 11 U.S.C. § 641(c)(2) and California state spendthrift law, the Plan is not property of the bankruptcy estate. Because the Plan is excluded in its entirety under California state spendthrift law, we need not reach the merits of SCPMG’s cross-appeal. Accordingly, we affirm the decision of the BAP excluding the Keogh Plan from the bankruptcy estate.
I.

FACTUAL AND PROCEDURAL BACKGROUND

Debtor Moses is a physician who elected to participate in a Keogh Plan offered by SCPMG to its partner physicians. The profit-sharing plan was established as a spendthrift trust and its benefits are payable only upon a participant’s termination of employment, retirement, disability or death. More than 2,400 partner physicians participate in the Keogh Plan. A twelve-member committee administers the Plan; Debtor Moses is not a member of the committee, although he can vote in elections for one committee member.
Debtor Moses can participate in the Plan so long as he is a partner physician with SCPMG. He must, under the Plan’s terms, contribute a percentage of his income-an amount predetermined by the terms of the Plan and the Internal Revenue Code (“I.R.C.”). Debtor Moses cannot borrow funds from the Plan and cannot receive a distribution until one of the preconditions described above (i.e., termination of employment, retirement, disability or death) occurs. Debtor Moses cannot terminate or amend the Plan.
The Plan contains the following anti-alienation provision, as mandated by § 401(a)(13) of the I.R.C.:
11.4 Alienation.
(a) None of the benefits, payments, proceeds or claims of any Participant or Beneficiary shall be subject to any creditors and, in particular, the same shall not be subject to attachment or garnishment or other legal process by any creditor, nor shall any such Participant or Beneficiary have the right to alienate, anticipate, commute, pledge, encumber or assign any of the benefits or payments or proceeds which such Participation or Beneficiary may except to receive, contingently or otherwise, under this Plan.
Debtors filed for bankruptcy on February 21, 1997. A hearing was held before the bankruptcy court to determine how to distribute the Debtors’ estate. The bankruptcy court held that the disposition of the Keogh Plan was governed by California Code of Civil Procedure § 704.115(e), and concluded that the Plan should be included in full with the bankruptcy estate. SCPMG filed a motion for reconsideration on August 22, 1996, and on August 23, 1996, filed a notice of appeal from the bankruptcy court’s order. On September 9, 1996, the bankruptcy court denied SCPMG’s motion for reconsideration.
The BAP heard SCPMG’s appeal on June 18,1997, and filed its Order on November 14, 1997, reversing the decision of the bankruptcy court. The BAP concluded that (1) the Keogh Plan was excluded in full from the Debtors’ estate because section 11.4 of the Plan was a valid anti-alienation provision in an enforceable spendthrift trust and (2) § 401(a)(13) of the I.R.C. did not have an enforcement provision as required by § 504(c)(2) of the Bankruptcy Code, and therefore could not be relied upon to exclude the Keogh Plan from the Debtors’ estate.
*473 On December 5, 1997, Ehrenberg, the trustee for the estate, appealed from the decision of the BAP regarding the trust’s exclusion in full from the estate. On December 18, 1997, SCPMG cross-appealed from the decision of the BAP regarding the panel’s interpretation of § 401(a)(13) of the I.R.C.
II.

STANDARD OF REVIEW

This case involves a review of the decision of the BAP and construction of California Code of Civil Procedure § 704.115. The Court reviews each de novo. See In re MacIntyre, 74 F.3d 186, 186 (9th Cir.1996) (questions of California statutory construction); In re Johnston, 21 F.3d 323, 326 (9th Cir.1994) (review of BAP decisions).
III.

DISCUSSION

A. California Spendthrift Trust Law.
The act of filing a petition under the Bankruptcy Code commences bankruptcy proceedings and creates an estate comprised of “all legal or equitable interests of the debtor in property as of the commencement of the case.” 11 U.S.C. § 541(a) (1988). The Code, however, excludes from the estate property that contains a “restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law.” 11 U.S.C. § 541(c)(2). Under Bankruptcy Code § 541(c)(2), an anti-alienation provision in a valid spendthrift trust created under state law is an enforceable “restriction on the transfer of a beneficial intei'est of the debtor” and thus serves to exclude the trust corpus from the bankruptcy estate. See Patterson v. Shumate, 504 U.S. 753, 757-58, 112 S.Ct. 2242, 2246, 119 L.Ed.2d 519 (1992).
California law recognizes the validity of spendthrift trusts. See In re Newton, 922 F.2d 1379 (9th Cir.1990) (citing Cal. Prob.Code §§ 15300 et seq. (West 1987)). The critical inquiry in determining whether a spendthrift trust is valid under California law is whether the trust’s beneficiaries exercise excessive control over the trust. See In re Witwer, 148 B.R. 930, 937 (Bankr.C.D.Cal.1992). California law does not allow a participant with excessive control over his or her trust to shield that trust with an anti-alienation provision lacking true substance. See id.
In addition, under California law, a settlor of a spendthrift trust cannot also act as beneficiary of that trust (i.e., California law prohibits “self-settled” trusts). See Cal. Prob.Code § 15304(a) (West 1987). California law voids self-settled trusts to prevent individuals from placing their property beyond the reach of their creditors while at the same time still reaping the bounties of such property. See Nelson v. California Trust Co., 33 Cal.2d 501, 202 P.2d 1021, 1021 (Cal.1949).
In this case, the BAP properly concluded that the anti-alienation provision in the Keogh Plan sufficiently divorced the Debtors from control over the trust corpus. First, the trust was not self-settled because SCPMG, not the Debtors, was the settlor of the trust. See id. Second, SCPMG created and administered the Plan. Third, Debtors did not have the ability to terminate or amend the Plan. Once Debtor Moses decided to join the plan, that decision was irrevocable. Finally, Debtors did not have access to the Plan until Debtor Moses’ retirement. The decision of the BAP in this case is entirely consistent with case law from this circuit. Instruments that preclude debtors from accessing a trust’s corpus until termination of employment, retirement, death or disability have been upheld as valid spendthrift trusts, see In re Kincaid, 917 F.2d 1162, 1168 (9th Cir.1990), whereas instruments that allow debtors unfettered access to a trust’s funds have not, see Witwer, 148 B.R. at 938.
The record supports the BAP’s conclusion that the Keogh Plan was a valid spendthrift trust with an enforceable anti-alienation provision because Debtors did not exercise excessive control over the trust’s corpus. In fact, it appears- that Ehrenberg concedes this issue in his Reply Brief: “Appellees have suggested that the Trustee has ... abandoned his argument [sic] below that the Plan *474 is not a valid spendthrift trust.... This was never the Trustee’s argument.” Appellant’s Reply Brief at p. 3 (internal quotation marks omitted).
B. California Code of Civil Procedure § 70k. 115.
Ehrenberg also contends that the BAP should not have allowed Debtors to exclude the Keogh Plan in full from the bankruptcy estate. Ehrenberg argues that the BAP failed to consider California Code of Civil Procedure § 704.115 which, he argues, only allows Debtors to exclude a portion of the trust corpus from the bankruptcy estate. Section 704.115, in pertinent part, reads as follows:
(a) As used in this section, “private retirement plan” means:
(3) Self-employed retirement plans and individual retirement annuities or accounts provided for in the Internal Revenue Code of 1954 as amended, to the extent the amounts held in the plans, annuities, or accounts do not exceed the maximum amounts exempt from federal income taxation under that code....
(e) Notwithstanding subdivision (b) and (d) ... the amounts described in paragraph (3) of subdivision (a) are exempt only to the extent necessary to provide for the support of the judgment debtor when the judgment debtor retires and for the support of the spouse and dependents of the judgment debtor, taking into account all resources that are likely to be available for the support of the judgment debtor when the judgment debtor retires.
Cal.Civ.Proc.Code § 704.115 (West 1987) (emphasis added).
Reduced to its essence, Ehrenberg’s argument is that § 704.115 directly conflicts with state spendthrift law. He contends that the legislature, in enacting § 704.115, decided that self-employed retirement plans, such as Debtors’ Keogh Plan, are exempt from the bankruptcy estate only to the extent necessary to support the debtor.
We reject this contention. First, exemption issues only arise if the court concludes that the Plan is part of the bankruptcy estate. In other words, if § 704.115 is simply an “exemption” statute, it does not effect the estate’s disposition because the Debtors’ Keogh Plan is not part of the bankruptcy estate. See In re Spirtos, 992 F.2d 1004, 1007 (9th Cir.1993). Second, even if § 704.115 is not an exemption statute, it does not conflict with state spendthrift law and has no effect on the exclusion of the Keogh Plan in this case.
1. Section 701.115 is an exemption statute which does not effect the disposition of Debtors’ bankruptcy estate.
With regard to the first point, Debtor Moses’s Keogh Plan, to repeat, contains a real restraint on alienation and qualifies as a spendthrift trust. See supra, pp. 701-702. Therefore, 11 U.S.C. § 541(c)(2) allows Debtors’ to exclude the Plan in full from the bankruptcy estate. This makes § 704.115, which is part of the “Exemptions” subchapter of the “Enforcement of Money Judgments” Title, inapplicable. We need not consider whether the Keogh Plan is exempted in part under § 704.115 because we have already concluded that the Plan is excluded in full. As held by this Court in Spirtos, 992 F.2d at 1007:
Whether Debtor’s plans are excluded from the estate is a question that should be addressed by the bankruptcy court in the first instance. The exemption question arises only if the plans are first determined to be property of the estate.... In fact, if the plans are not property of the estate, the bankruptcy court should not make a decision on the exemption question.[1]
*475 2. Section 704.115 and California spendthrift law do not conflict.
Moreover, even if § 704.115 were not an “exemption” statute, Ehrenberg’s argument nevertheless fails. Ehrenberg contends that § 704.115 directly conflicts with preexisting state spendthrift law. He argues that when the legislature enacted § 704.115, its intention was to modify the old rale that self-employed retirement plans (e.g., Keogh plans) are excluded in full from the bankruptcy estate. The new regime, he contends, only allows individuals like Debtor Moses to exclude from the bankruptcy estate that which is necessary for his support; the rest can be reached by judgment creditors. Neither the text of the statute nor its legislative history supports Ehrenberg’s argument.
3. The Supreme Court’s decision in Patterson v. Shumate controls this case.
a. The Patterson decision.
In Patterson, the Supreme Court was presented with the issue of whether an anti-alienation provision contained in an ERISA-qualified pension plan constituted a restriction on transfer enforceable under “applicable nonbankruptcy law.” Petitioner argued, and several circuit courts had concluded, that the phrase “applicable nonbankruptcy law” from § 541(c)(2) included only state law, and did not include federal law. It followed that plans with anti-alienation provisions which were qualified under federal law-i.e, ERISA in Patterson-were not excluded in full from the bankruptcy estate. See Patterson, 504 U.S. at 760, 112 S.Ct. at 2248, 119 L.Ed.2d 519.
The Supreme Court disagreed and held that the phrase “applicable nonbankruptcy law” clearly included federal and state law. See id. at 757, 112 S.Ct. at 2246, 119 L.Ed.2d 519. The Court held that the “plain language” of the statute, as well as its legislative history, strongly supported this conclusion. Thus, in Patterson, the petitioner’s ERISA qualified pension plan with an anti-alienation provision was excluded from the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2). See id. at 760, 112 S.Ct. at 2248, 119 L.Ed.2d 519.
The petitioner in Patterson argued that to interpret the phrase “applicable nonbank-ruptcy law” as the Supreme Court did would render another section of the bankruptcy code, 11 U.S.C. § 522(d)(10)(E), superfluous. See id. at 762, 112 S.Ct. at 2248-49, 119 L.Ed.2d 519. Section 522(d)(10)(E) states that a debtor who elects the exemptions set forth in § 522(d) may exempt from his bankruptcy estate the right to “a payment under a stock bonus, pension, profitsharing, annuity, or similar plan ..., to the extent reasonably necessary for the support of the debtor and any dependent of the debtor.” 11 U.S.C. § 522(d)(10)(E) (1988). The petitioner with some force argued that if a debtor could exclude his ERISA plan in full from the bankruptcy estate, “then there would have been no reason for Congress to create a limited exemption for such interests in the statute.” Patterson, 504 U.S. at 762, 112 S.Ct. at 2249, 119 L.Ed.2d 519.
The Patterson Court rejected the petitioner’s surplusage argument, concluding that § 522(d)(10)(E) exempted from the bankruptcy estate a much broader category of interests than did § 541(c)(2). See id. at 763, 112 S.Ct. at 2249, 119 L.Ed.2d 519. For example, the Court noted that pension plans established by government entities need not comply with ERISA’s anti-alienation requirements, but nonetheless could be partially exempted under § 522(d)(10)(E). See id. at 762-63, 112 S.Ct. at 2249, 119 L.Ed.2d 519 (listing a variety of examples). Because § 522(d)(10)(E) covered a wider range of plans and contracts than § 541(c)(2), the Court’s interpretation of the interaction between the two provisions did not render § 522(d)(10)(E) surplusage. The statutes instead covered two different spheres of interests. See id. at 763, 112 S.Ct. at 2249, 119 L.Ed.2d 519.
b. Our decision does not render Section 704-115 superfluous.
Ehrenberg, like the petitioner in Patterson, contends that to allow a debtor to *476 exclude his entire interest in a Keogh pension plan from the bankruptcy estate renders § 704.115(e) of the California Code of Civil Procedure superfluous. Under § 704.115(e), to repeat, a debtor may exempt a self-employed retirement plan such as a Keogh plan from a judgment creditor “only to the extent necessary to provide for the support of the judgment . debtor.” ■ Cal.Civ.Proc.Code § 704.115. If a debtor’s interest in a Keogh Plan could be excluded in full from the bankruptcy estate, Ehrenberg argues, there would have been no reason for the California Legislature to create a limited exemption for such interests elsewhere in the Code.
Ehrenberg’s surplusage argument fails, however, for the same reasons that the petitioner’s argument failed in Patterson. First, § 704.115 exempts from the bankruptcy estate a much broader category of interests than spendthrift law excludes. For example, the section applies regardless of whether the Keogh Plan has a valid anti-alienation provision. See Cal.Civ.Proc.Code § 704.115. Although a debtor’s interest in these plans could not be excluded under § 541(c)(2) because these plans lack the proper transfer restrictions, they nevertheless could be partially exempted under § 704.115.
Second, the legislature placed § 704.115 in the subchapter entitled “Exemptions.” Despite such placement, Ehrenberg argues that the statute reverses California spendthrift law and acts as a limit on a debtor’s ability to “exclude” a trust from his estate. Ehrenberg’s argument, however, is one of implication only. He points to no legislative history demonstrating an intent to repeal spendthrift law. California courts disfavor repeals by implication. See I.E. Assocs. v. Safeco Title Ins. Co., 39 Cal.3d 281, 216 Cal.Rptr. 438, 702 P.2d 596, 598 (Cal.1985). We should respect this principle of California jurisprudence. Moreover, not to respect it would ignore the structure of 704.115. The section’s placement indicates an intent on the part of the legislature to draft an exemption, not an exclusion, for self-employed retirement plans such as Debtors’ Keogh Plan.
Third, § 704.115 is not rendered inoperative by our decision. It applies in situations other than bankruptcy proceedings. It applies to all situations where a judgment creditor seeks money from a judgment debtor. The statute prevents the creditor from reaching the entire corpus of a trust-it allows the debtor to maintain the corpus to the extent necessary for the debtor’s support. See, e.g., Yaesu Elecs. Corp. v. Tamura, 28 Cal.App.4th 8, 33 Cal.Rptr.2d 283 (Cal.Ct.App.1994) (section applies in situation where debtor conveys a gift to a third party; creditor can be blocked from reaching entire corpus). The statute has applicability outside bankruptcy law and will maintain its viability even if the Court concludes that it was not designed to limit state spendthrift law.
In sum, Ehrenberg’s argument is not supported by case law, the plain language of § 704.115 or its placement in the code. Section 704.115 is what the chapter in which it is placed is entitled-it is an “Exemption” statute that does not interfere with the Debtors’ ability to exclude their Keogh Plan in full from their bankruptcy estate. Because state spendthrift law and § 704.115 only partially overlap, we must construe them in harmony. See Murillo v. Fleetwood Enters., Inc., 17 Cal.4th 985, 73 Cal.Rptr.2d 682, 953 P.2d 858, 861 (Cal.1998) (stating that “even were we to agree that some redundancy exists between the two statutes, such redundancy would be insufficient” to render one of the two statutes superfluous).
In light of this disposition, we do not reach the merits of SCPMG’s cross-appeal.
IV.

CONCLUSION

For the foregoing reasons, we affirm the BAP’s decision excluding in full Debtors’ Keogh Plan from the bankruptcy estate.
AFFIRMED.

. Other decisions from this circuit are in accord. See, e.g., In re Rueter, 11 F.3d 850 (9th Cir.1993); In re Switzer, 146 B.R. 1 (Bankr.C.D.Cal.1992) (concluding that the debtor’s trust did not contain a valid anti-alienation provision and only then considered the limited exemption under § 704.115).
Ehrenberg maintained at oral argument that Spirtos was inapplicable because it dealt with exclusion under federal law (i.e., ERISA), and here we are considering an exclusion under state law (e.g., Keogh Plans). That is, however, a distinction without a difference. Section 541(c)(2) allows exclusion of a pension plan if *475 that plan has a valid anti-alienation provision, under state or federal law. See Patterson, 504 U.S. at 760, 112 S.Ct. 2242. The only difference between an ERISA plan and a Keogh plan is the amount which is exempt from the bankruptcy estate, a question we do not reach under Spirtos.