**In re James J. WITWER, Debtor.**

**Bankruptcy No. SA 91–40038 JW.**

United States Bankruptcy Court,
C.D. California.

Dec. 1, 1992.

---

Robert A. Foster, II, Irvine, CA, for creditors, Emery E. ("Bill") Lampman, Ralph James Lampman, as Trustee of the James Lampman Trust, and Ralph James Lampman, as Executor of the Estate of James Frank Lampman.

Keith Meyer, Fell, Meyer & McCarthy, Costa Mesa, CA, for debtor, James J. Witwer, M.D.

## MEMORANDUM OF DECISION

JOHN J. WILSON, Bankruptcy Judge.

Creditors, Emery E. ("Bill") Lampman, Ralph James Lampman, as Trustee of the

James Lampman Trust, and Ralph James Lampman, as Executor of the Estate of James Frank Lampman (collectively, "Creditors") object to James J. Witwer's ("Debtor") claim that his profit sharing plan is exempt from creditors' claims. The Debtor contends that his profit sharing plan is excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2) of the Bankruptcy Code ("Code") or, alternatively, is exempt pursuant to California Code of Civil Procedure ("C.C.P.") § 704.115.

## I. STATEMENT OF FACTS

On October 21, 1991, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The Debtor has claimed his profit sharing plan corpus exempt pursuant to California Code of Civil Procedure § 704.115. On December 13, 1991, pursuant to Rule 4003 of the Federal Rules of Bankruptcy Procedure, the Creditors filed an Objection to Debtor's Claims of Exemption for, inter alia, the Debtor's profit sharing plan.

The Debtor is the sole stockholder and President of James J. Witwer, M.D., Inc., a California corporation. He is that corporation's only employee and beneficiary of a corporate profit sharing plan entitled the James J. Witwer M.D., Inc. Profit Sharing Plan ("Plan").[1] Although the Debtor's Plan contemplates extending coverage to

future employees, the Debtor is and always was the sole participant of the Plan.[2]

The Plan, with a present net value of $1.8 million, was originally established during 1970, and has been amended to remain consistent with Internal Revenue Service ("IRS") regulations for plan exemption. To ensure plan exemption, the Plan has been maintained by numerous specialists. Specifically, the Debtor hired an attorney experienced in pension and retirement plan law as well as an accountant to ensure the Plan was IRS tax qualified. Furthermore, a professional plan administrative service and a bank's trust department were hired to document loan transactions, collect loan repayments and compile quarterly and annual reports which depict all Plan transactions and the Plan's net worth.

The Plan contains an anti-alienation provision which purports to insulate the Plan corpus from creditor attachment.[3] The Plan, however, gives the Debtor great latitude in withdrawing his beneficial interest, which became 100% vested after six years of employment. Further, the Plan provides that upon attaining the "normal retirement age" of 55, the Debtor would be entitled to receive his retirement benefits in a single lump sum payment. The Debtor has exceeded the Plan's normal retirement age. In fact, on December 18, 1990, March 5, 1991 and May 8, 1991, the Debtor received

---

1. Originally entitled the James J. Witwer, M.D., Inc. Money Purchase Pension Plan, effective June 1, 1989, the Debtor amended the Plan to be a profit sharing plan and the Plan was renamed the James J. Witwer, M.D., Inc. Profit Sharing Plan.

2. During oral argument, debtor's counsel contended that the Debtor is not the only employee covered by the Plan because the corporation is a member of the Newport Orthopaedic Surgery Medical Group, Inc., an affiliated service group as defined by Internal Revenue Code § 414(m). However, as noted on the Debtor's Internal Revenue Service Form 5500–C "Return/Report of Employee Benefit Plan", for fiscal years ending May 31, 1984 and May 31, 1987, in response to the question posed by Section 6(e), the Debtor responded that his plan was not part of an affiliated group. Furthermore, pursuant to an amendment to the Debtor's Plan, effective March 1, 1985, specifically excluded from Plan participation were "[a]ll Employees eligible to

participate in the Newport Orthopaedic Surgery Medical Group, Inc. Money Purchase Pension and Profit Sharing Plans." Also, at the Debtor's 2004 Examination, he testified that he was the only plan participant. Thus, based upon the evidence presented, this Court finds that the Debtor was the only plan participant.

3. Article XVI, ¶ 16.03 of the Plan, provides in pertinent part:

*Protection From Attachment, Etc.; Prohibition Against Alienation*—Unless otherwise required by law, none of the benefits, payments, proceeds, claims or rights of any Participant or Beneficiary hereunder shall be subject to any claim of any creditor of any Participant or Beneficiary, and in particular, the same shall not be subject to attachment or garnishment or other legal process nor shall such Participant or Beneficiary have any rights to alienate, anticipate, pledge, encumber, or assign any of the benefits or payments or proceeds which he may expect to receive, contingently or otherwise, under the Plan ...

distributions paid as lump sum cash payments in the amounts of $128,000, $75,000 and $61,204, respectively.

The Plan is subject to amendment or discontinuance at will by the employer/Debtor. Also, the Plan provides that in the event of termination of the Debtor's employment with the corporation, he is entitled to payment of his accrued beneficial interest. Thus, as the Debtor is the sole shareholder and only employee of the corporation, he has sole discretion to terminate the Plan, whereupon all of the assets in the Plan would be distributed to him.

The Debtor has on numerous occasions borrowed money from the Plan. Between 1978 and 1990 the Plan loaned the Debtor in excess of $1.4 million. Presently, the Debtor has one outstanding loan, with a maturity date of July 10, 1995. As of January 15, 1992, the outstanding loan balance was $39,000. All other loans made to the Debtor have been paid back in full with interest.

The Debtor has also made numerous unsecured loans, evidenced by promissory notes, to friends while charging interest on the money borrowed. The amount of these loans total $179,000. Two of those loans, with a combined principal sum of $80,000, are in default.

On April 13, 1992 the Creditors moved for summary judgment. After hearing oral arguments on June 25, 1992 and September 10, 1992, the motion for summary judgment was submitted for further consideration to determine whether the Debtor's pension plan is excluded from the bankruptcy estate under 11 U.S.C. § 541(c)(2) of the Code or, alternatively, whether the Plan is exempt pursuant to C.C.P. § 704.115.

## II. DISCUSSION

### A. EXCLUSION OF THE DEBTOR'S PENSION PLAN FROM THE BANKRUPTCY ESTATE

### 1. IS THE DEBTOR'S PENSION PLAN EXCLUDED UNDER ERISA?

The filing of a petition under the Code creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1988). An exception to this broadly defined section is found in § 541(c)(2) (1988), which provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."

Recently, the United States Supreme Court in *Patterson v. Shumate*, ── U.S. ──, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992) resolved years of conflicting rulings among the Courts of Appeals as to whether, in addition to a state spendthrift trust, a pension plan under the Employee Retirement Income Security Act of 1974 ("ERISA") which contains an anti-alienation provision should be excluded from the bankruptcy estate. The Court held that the plain language of the Code and ERISA established that an anti-alienation provision in a qualified pension plan constitutes a restriction enforceable under "applicable nonbankruptcy law" for purposes of § 541(c)(2). *Id.* at ── ── ──, 112 S.Ct. at 2246–48. Thus, the debtor's ERISA qualified plan was excluded from his bankrupt estate. *Id.*

ERISA qualified plans are created pursuant to 29 U.S.C. § 1001 et seq. of the Labor Code and 26 U.S.C. § 401(a) of the Internal Revenue Code ("I.R.C."), and must include a restriction against alienation. 29 U.S.C. § 1056(d)(1) (1988); 26 U.S.C. § 401(a)(13) (1988).[4] In *Patterson* the Court deter-

---

**4.** 29 U.S.C. § 1056(d)(1) provides:

**(d) Assignment or alienation of plan benefits**

　**(1)** Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated.

26 U.S.C. § 401(a)(13) provides in relevant part:

**(13) Assignment and Alienation.—**

**(A) In general.—**A trust shall not constitute a qualified trust under this section unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated. For purposes of the preceding sentence, there shall not be taken into account any voluntary and revocable assignment of not to exceed 10 percent of any

mined that the anti-alienation provision in the debtor's plan satisfied the literal terms of § 541(c)(2). However, the preliminary issue regarding whether or not the plan was ERISA qualified was apparently conceded as the case never addressed the requirements necessary for a plan to be ERISA qualified.

In this case the Creditors assert two challenges to the Debtor's claim that his Plan is ERISA qualified. First, the Creditors contend that the Debtor, as the sole shareholder and only person employed by the James J. Witwer, M.D. corporation is an "employer" and therefore cannot be an "employee" for purposes of plan participation. Thus, the argument continues, the Debtor's Plan is not ERISA qualified and *Patterson* is inapplicable. Alternatively, if the Plan is ERISA qualified, the Creditors challenge the validity of the anti-alienation provision in the Debtor's Plan.

The Creditors cite *Kwatcher v. Massachusetts Service Employees Pension Fund,* 879 F.2d 957 (1st Cir.1989) in support of their first challenge. In *Kwatcher* the sole shareholder of a corporate employer sued the administrator of an ERISA qualified pension plan for collection of benefits allegedly due him. *Id.* at 958. The Court held that ERISA does not permit a sole shareholder who is employed by the corporation he owns to participate in an ERISA regulated pension plan. *Id.* at 963. To recover benefits, the Court reasoned, ERISA required Kwatcher to be a "participant" in the plan. *Id.* at 959.

ERISA defines "participant" as a present or former employee of an employer. 29 U.S.C. § 1002(6) (1988). The Secretary of Labor ("Secretary"), pursuant to authority granted in 29 U.S.C. § 1135 (1988)[5], has limited the definition of employee as follows:

(b) *Plans without Employees.* For purposes of title I of the Act and this chapter, the term "employee benefit plan" shall include any plan, fund or program, other than an apprenticeship or other training program, under which no employees are participants covered under the plan as defined in paragraph (d) of this section ...

(c) *Employees.* For purposes of this section:

(1) An individual and his or her spouse shall *not* be deemed to be employees with respect to a trade or business, *whether incorporated or unincorporated,* which is wholly owned by the individual or by the individual and his or her spouse ...

29 C.F.R. § 2510.3–3(b), (c)(1) (1988) (emphasis added).

Since the Secretary is vested with policy making power, its authority to supplement ERISA with regulations are afforded considerable deference. *See Sure–Tan, Inc. v. National Labor Relations Board,* 467 U.S. 883, 891, 104 S.Ct. 2803, 2808, 81 L.Ed.2d 732 (1984). Accordingly, this Court may not substitute its interpretation for that of the Secretary so long as the Secretary's regulation is "reasonably defensible." *Id.*

Congressional support for the Secretary's regulation is found in ERISA's text and legislative history. Title I of ERISA was adopted to remedy the abuses that existed in the handling and management of welfare and pension plan assets held in trust for workers in a traditional employer-employee relationship. *Schwartz v. Gordon,* 761 F.2d 864, 868 (2d Cir.1985); *See* 29 U.S.C. § 1001(a) (1988) (congressional finding that "owing to the inadequacy of current minimum standards, the soundness and stability of plans ... may be endangered ..."); *See* S.Rep. No. 383, 93d Cong., 2nd Sess., (1974) *reprinted in* 1974 U.S.C.C.A.N. 4639, 4890, 4903 (Congress recognized the need "for more effective remedies to prevent misuse of pension funds to the detriment of ... participating

---

benefit payment made by any participant who is receiving benefits under the plan unless the assignment or alienation is made for purposes of defraying plan administration costs....

**5.** 29 U.S.C. § 1135 provides in relevant part:

"... [T]he Secretary [of Labor] may prescribe such regulations as he finds necessary or appropriate to carry out the provisions of this subchapter ..."

employees"). Further, since the plan assets are to be held for the exclusive benefit of participants and beneficiaries, plan assets are not to inure to the benefit of the employer. 29 U.S.C. § 1103(c)(1) (1988).

Unlike the traditional employee, this Debtor as the sole shareholder and only employee of his corporation has complete control over both the amount of the assets to be contributed to a profit sharing plan, as well as the content of the plan corpus. Thus, the remedial scheme established by Title I is not necessary for the protection of a self-employed Debtor.

 Having determined that the Secretary's regulation is reasonably related to the provisions of ERISA, this Court's determinant is the plain language of the regulation which must be enforced according to its literal terms. *See Patterson,* —— U.S. at ——, 112 S.Ct. at 2246; *Union Bank v. Wolas,* —— U.S. ——, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991); *Toibb v. Radloff,* —— U.S. ——, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991); *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). Plainly read, the regulation specifically excludes an individual from ERISA qualification when the corporation is wholly owned by the individual. *But See Dodd v. John Hancock Mutual Life Insurance Company,* 688 F.Supp. 564 (E.D.Cal.1988) (Despite Secretary's regulation that an individual is not an employee of a corporation wholly owned by the individual, the court held that when a self-employed individual elects to incorporate and the corporation employs others, there is simply no basis in ERISA for disregarding the corporate entity). Since the Secretary's regulation "... unambiguously debars a sole shareholder from employee status ...", this Court finds that, under ERISA, the Debtor is not a Plan participant. *Kwatcher,* 879 F.2d at 961.

 Further, despite the fact that the Debtor's Plan contemplates coverage extending to future employees, this Court cannot view the terms of the Plan within a vacuum. *In re Pruner,* 140 B.R. 1, 3 (M.D.Fla.1992). Such an approach would ignore the plain reality that, although under ERISA the Debtor is not an eligible plan participant, this Debtor is and always was the only person eligible to participate in the Plan. *Id.* As this Court is concerned not only with the form of the Plan but with its effect in operation, this Court finds that a Plan without eligible participants cannot be an ERISA qualified "employee pension benefit plan" as defined by 29 U.S.C. § 1002(2)(A).[6]

### 2. IS THE DEBTOR'S PENSION PLAN EXCLUDED UNDER THE INTERNAL REVENUE CODE?

Under the I.R.C. a trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under the plan may not be assigned, alienated or subject to attachment, garnishment, levy or execution. 26 U.S.C. § 401(a)(13); 26 C.F.R. 1.401(a)–13(b)(1) (1991). The Debtor contends that, in accordance with *Patterson,* I.R.C. § 401(a)(13) is applicable non-bankruptcy law which excludes the Debtor's interest in the Plan from his bankruptcy estate.

In support, the Debtor interprets *Patterson* as "clearly holding" that there is no limitation relating to the source of law contained in § 541(c)(2) and any federal law providing an anti-alienation provision that is enforceable must be respected by the bankruptcy code. The Debtor bases his interpretation of *Patterson* on the Supreme Court's statements that I.R.C. § 401(a)(13) contains similar restrictions as those found in ERISA § 1056(d) and that I.R.C. § 401(a)(13) is "the coordinate section" of

---

**6.** 29 U.S.C. 1002(2)(A) provides in pertinent part: Except as provided in subparagraph (B), the terms "Employee Pension Benefit Plan" and "Pension Plan" mean any plan, fund or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances, such plan, fund, or program—

(i) provides retirement income to employees, or

(ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond ...

ERISA's 1056(d). Thus, the argument continues, the anti-alienation provision of I.R.C. § 401(a)(13) prevents inclusion of the Plan in the bankruptcy estate as it is an enforceable restriction on transfer. Other than this expansive reading of *Patterson*, the Debtor fails to cite any statutory authority or case law to support this position.

The Debtor correctly states that under *Patterson*, § 541(c)(2) encompasses any relevant nonbankruptcy law so long as the transfer restrictions are "enforceable". *Patterson*, ⎯ U.S. ⎯, 112 S.Ct. at 2247. Under ERISA a plan participant, beneficiary, or fiduciary, or the Secretary of Labor may file a civil action to "enjoin any act or practice" which violates ERISA or the terms of the plan. 29 U.S.C. §§ 1132(a)(3), (a)(5). The "coordinate section" of the I.R.C., however, does not provide for a similar remedy.

■■■■ The provisions of I.R.C. § 401(a) relate solely to the criteria for tax qualification under the Internal Revenue Code. Although a transfer in violation of the required anti-alienation provision could result in adverse tax consequences I.R.C. § 401(a) does not appear to create any substantive rights that a beneficiary or participant of a qualified retirement trust can enforce. *Nolan v. Meyer*, 520 F.2d 1276, 1280 (2d Cir. 1975), *cert. denied*, 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975); *Cowan v. Keystone Employees' Profit Sharing Fund*, 586 F.2d 888, 890 (1st Cir.1978); *Reklau v. Merchants National Corporation*, 808 F.2d 628 (7th Cir.1986). Furthermore, absent the most compelling evidence of affirmative Congressional intent a federal court should not infer a private cause of action under I.R.C. § 401(a). *Cf. Touche Ross & Company v. Reddington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979) (As the terms of § 17(a) did not confer a private right of action, the Supreme Court refused to infer such a right under the Securities Exchange Act of 1934). As I.R.C. § 401(a) by its literal terms grants no private right

of action, this Court finds that the Debtor lacks standing to enforce his Plan's anti-alienation provision. Since this Court does not adopt the Debtor's expansive reading of *Patterson*, the Debtor's right to retain any of the funds in his Plan is dependent upon applicable state spendthrift trust law or state exemption law.

## 3. IS THE DEBTOR'S PLAN EXCLUDED UNDER CALIFORNIA SPENDTHRIFT TRUST LAW?

■■■■ Under Code § 541(c)(2), an anti-alienation provision in a spendthrift trust created under state law is enforceable to exclude the trust corpus from the bankruptcy estate. *In re Kincaid*, 917 F.2d 1162, 1166–69 (9th Cir.1990). California state law recognizes the general validity of spendthrift trusts. *In re Neuton*, 922 F.2d 1379 (9th Cir.1990); California Probate Code ("C.P.C.") §§ 15300 *et seq.* (West 1991). Under California law a settlor of a spendthrift trust cannot simultaneously be a beneficiary of the same spendthrift trust. Cal.Prob.Code § 15304(a) (West 1991).[7] The policy against these so-called "self-settled" trusts is to prevent an individual from placing his or her property beyond the reach of creditors while still enjoying the use and benefits of such property. *Nelson v. California Trust Co.*, 33 Cal.2d 501, 202 P.2d 1021 (1949); 11 *Witkin Summary of Cal.Law*, (9th ed. 1990) Trusts § 167, p. 1020–21.

■■ A crucial factor in deciding whether the Plan meets the California spendthrift requirements is the Debtor's degree of control over the trust. *In re Reid*, 139 B.R. 19, 21 (Bankr.S.D.Cal.1992). A participant with excessive control over a trust is not protected by an anti-alienation provision. *See In re Shuman*, 78 B.R. 254 (9th Cir. BAP 1987) (under Nevada law, no spendthrift trust where sole shareholder, president and beneficiary of plan could require full distribution upon termination of

---

7. C.P.C. § 15304. **Cases in which settlor is beneficiary**

(a) If the settlor is a beneficiary of a trust created by the settlor and the settlor's interest is subject to a provision restraining the voluntary

or involuntary transfer of the settlor's interest, the restraint is invalid against transferees or creditors of the settlor. The invalidity of the restraint on transfer does not affect the validity of the trust.

employment). *In re Reid*, 139 B.R. at 21 (no spendthrift trust where former employee had power to demand lump sum distribution); *Compare In re Kincaid*, 917 F.2d 1162 (9th Cir.1990) (debtor's ability to obtain funds from the plan pursuant to certain specified loan and hardship conditions did not destroy its spendthrift nature because such access was at the discretion of the administrator, not the debtor).

Although under state law a corporation is considered a separate legal entity, courts which have dealt with a one person corporation have disregarded the legal fiction that the incorporated individual as settlor is an entity separate from the individual beneficiary. *In re Reed*, 951 F.2d 1046 (9th Cir.1991); *In re Kaplan*, 97 B.R. 572 (9th Cir. BAP 1989); *In re Lichstrahl*, 750 F.2d 1488, 1490 (11th Cir.1985); *In re Goff*, 706 F.2d 574 (5th Cir.1983). Thus, control exercised over the Debtor's plan by a corporation must be restricted more if it is to be effective as a spendthrift trust against the creditors of a beneficiary who is the Plan's sole participant as well as the president and sole stockholder of the corporation. *Pitrat v. Garlikov*, 947 F.2d 419, 425 (9th Cir.1991).

The Debtor contends, however, that his Plan is a valid spendthrift trust because, James J. Witwer, M.D., Inc., rather than he, controls the trust. The Debtor's situation bears a striking resemblance to that of the debtors in *In re Reed*, 951 F.2d 1046 (9th Cir.1991) and *In re Kaplan*, 97 B.R. 572 (9th Cir. BAP 1989).[8]

In *In re Reed*, the debtor was a physician and sole shareholder of Affiliated Anesthesiologists, Ltd. Debtor Reed was also the trustee and sole beneficiary of the corporation's pension plan. As the sole shareholder, the debtor was in effect self-employed and exercised unrestricted control over the funds. The Court held the plan was not a valid spendthrift trust due to the degree of control the debtor had over the trust. *Reed*, 951 F.2d at 1050.

Similarly, in *In re Kaplan*, the debtor was a physician, officer and shareholder of Phoenix Radiology Associates, Ltd. Debtor Kaplan was also the trustee and sole beneficiary of his pension plan. As trustee, Dr. Kaplan had control over the investment of the benefits, and the right to withdraw contributions from the plan. The Court held that Debtor Kaplan's "dominion and control" over the plan was excessive for it to qualify as a spendthrift trust. *Kaplan*, 97 B.R. at 578.

■ In this case, the fact that the Debtor could, at his sole discretion, authorize a distribution under the Plan or terminate the Plan, calls into question the validity of the Plan's anti-alienation provision. *In re Shuman*, 68 B.R. 290 (Bankr.D.Nev.1986). In fact on December 18, 1990, March 5, 1991 and May 8, 1991, the Debtor received distributions paid as lump sum cash payments in the amounts of $128,000, $75,000 and $61,204, respectively. Furthermore, the Debtor's sole authority to authorize an investment or distribution of the Plan corpus is exemplified most notably by the numerous loans issued to himself and his "friends". Lastly, as the Debtor has exceeded his normal retirement age called for in the Plan, he is entitled to demand a complete distribution of the corpus. Such dominion and control by the Debtor is inconsistent with the notion of spendthrift trusts. Therefore, given the Debtor's unbridled control over the Plan and his immediate access to the Plan assets, this Court finds that the restriction on alienation in the Debtor's Plan is not enforceable and the Plan assets are not excluded from the Bankruptcy estate under Code § 541(c)(2).

## B. EXEMPTION OF THE DEBTOR'S PENSION PLAN FROM THE BANKRUPTCY ESTATE UNDER CALIFORNIA LAW

Having determined that the Plan is not excluded from the bankruptcy estate under Code § 541(c)(2), this Court now turns to

---

8. An exhaustive search has not revealed any published California case law either similar or analogous to the instant case. Therefore, although in both cited cases the Ninth Circuit Court of Appeals and Bankruptcy Appellate Panel were technically interpreting Arizona law regarding self-settled trusts, each court's analysis and conclusions are highly persuasive here.

the issue of whether the Plan may be claimed as exempt from creditors' claims under California law. Under the Code, an individual who files a petition for relief is entitled to a number of "exemptions" whereby certain assets may be excluded from bankruptcy administration and distribution to the debtor's creditors. 11 U.S.C. § 522. The Code affords a debtor a choice to exempt either assets specified in the Code or those assets specified as exempt under a debtor's state law. 11 U.S.C. § 522(b)(2)(A) (1988).[9]

California has enacted legislation "opting out" of the federal exemption scheme. *See* C.C.P. § 703.130 (West 1987). California law makes available two alternative exemption schemes in bankruptcy cases. *See* C.C.P. § 703.140 (West 1987). In this case, the Debtor has claimed his plan corpus exempt pursuant to California C.C.P. § 704.115 (West 1987).[10]

Despite the fact that the Debtor's Plan is not ERISA qualified, the plain language of C.C.P. § 704.115 does not reveal that the Debtor's Plan exemption is conditioned upon a finding that his Plan is ERISA qualified. Additionally, a review of the legislative history accompanying the enactment of C.C.P. § 704.115 reveals that ERISA qualification is not the sole basis for exemption under California law. In pertinent part, the legislative history provides: "... The exemption under the new law applies to all plans, annuities, and accounts that are provided for in the Internal

Revenue Code ... In other respects the new law continues the substance of the existing retirement exemptions ..." 16 Cal. L.Rev.Comm. Reports 1000, 1087–88 (1982).

There are numerous references to ERISA in the Internal Revenue Code which would imply that C.C.P. § 704.115 encompasses ERISA qualified plans. However, the legislative history of C.C.P. § 704.115 does not provide that an ERISA qualified plan is the sole basis upon which a debtor may qualify for exemption under California law. Thus, the Debtor's Plan still qualifies for exemption under California law.

Further, under C.C.P. § 704.115, whether or not the debtor exercises control over the plan is irrelevant to the exemption. *In re Vigghiany,* 74 B.R. 61 (Bankr. S.D.Cal.1987). Thus, although the anti-alienation restraint is invalid as to the Debtor's interest in the trust, the trust itself remains valid. Cal.Prob.Code § 15304(a) (West 1991); 20 Cal.L.Rev. Comm. Reports 1001, 1868 (1990) ("This section does not affect the protection of certain pension trusts by Code of Civil Procedure Section 704.115."). Accordingly, under California law the Debtor may exempt his Plan assets despite an invalid anti-alienation provision.

As amended, the Debtor's Plan is a Profit Sharing Plan. As such, the Debtor's Plan corpus may be entirely exempt if the Plan was designed and used for retirement purposes. *In re Cheng,* 943 F.2d 1114 (9th

9. Code § 522(b)(2)(A) provides in pertinent part:

> (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.
> ....
> (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition ...

10. C.C.P. § 704.115 provides, in pertinent part:
(a) As used in this section, "private retirement plan" means:
(1) Private retirement plans, including, but not limited to, union retirement plans.
(2) Profit-sharing plans designed and used for retirement purposes.

(3) Self-employed retirement plans and individual retirement annuities or accounts provided for in the Internal Revenue Code of 1954 as amended, to the extent the amount held in the plans, annuities, or accounts do not exceed the maximum amounts exempt from federal income taxation under that code.

(e) Notwithstanding subdivisions (b) and (d), except as provided in subdivision (f), the amounts described in paragraph (3) of subdivision (a) are exempt only to the extent necessary to provide for the support of the judgment debtor when the judgment debtor retires and for the support of the spouse and dependents of the judgment debtor, taking into account all resources that are likely to be available for the support of the judgment debtor when the judgment debtor retires ...

**940**

Cir.1991)[11]; Cal.Civ.Proc.Code § 704.-115(a)(2) (West 1987).[12]

The Creditors contend that the Debtor did not use his Plan for retirement purposes, and that he has used his Plan as if it were his personal bank account since he has made distributions to himself and numerous loans to both himself and his "friends". The Creditors point to the fact that the loans to the Debtor's "friends" were unsecured and two of the loans are in default. In support, the Creditors rely on *In re Daniel*, 771 F.2d 1352 (9th Cir.1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986).

In *Daniel* the debtor established a medical corporation which in turn created a pension and profit sharing plan. Acting as the plan's trustee, Debtor Daniel made a $75,000 unsecured loan to himself so that he could buy a house. The loan was substantially equal in amount to the debtor's interest in the plan. *Id.* at 1357. Neither interest nor principal payments were made to the plan. Instead, upon maturity, Debtor Daniel rolled over the note.

Also, two weeks prior to filing his bankruptcy petition, the debtor deposited $39,-000, which represented all of the corporation's available cash, in the plan. *Id.* The Court denied exemption of the debtor's plan and held that because "the plan essentially operated to meet debtor's short-term personal needs by lending money or shielding and hiding funds from creditors" it was not principally used for retirement purposes. *Id.* at 1358.

■ The key requirement to determine if the Debtor's Plan is exempt from the estate, is that the Plan must be used for retirement purposes. *In re Bloom*, 839

F.2d 1376, 1379 (9th Cir.1988). It is, however, inappropriate to hold the Debtor to a prudent investor test since even an imprudently invested plan may still be used for retirement purposes. *Id.*

In *In re Bloom*, the Ninth Circuit Court of Appeals held that although the debtor had loaned more than half of the funds in her retirement plan to herself without taking a security interest, her actions did not constitute such an abuse of the plan to cause it to lose its retirement purpose and exemption under California law. *Id.* Of particular importance was the fact that the debtor followed trust agreement procedures for obtaining loans, charged a reasonable rate of interest on the loans, regularly made interest payments, and there was no indication that she used the plan to hide otherwise ineligible assets from bankruptcy administration. *Id.*

■ Similarly, in this case, the Debtor followed trust agreement procedures in obtaining loans for himself and others. Promissory notes were obtained for all transactions. All loan agreements provided commercially reasonable interest rates which ranged from a low of 9.5% to a high of 14%. The Debtor has repaid all the money he has borrowed except the one loan with a maturity date of July 10, 1995. The fact that two of the loans made to others are in default is insufficient to find that the Plan was not designed and used for retirement purposes. As the *Bloom* Court has noted, this Court cannot, in hindsight, determine the investment prudence of each individual investment.

Further, although numerous loans were made by the Plan, the Plan invested extensively in investments other than loans to

---

**11.** Although the Plan, as amended, is entitled the James J. Witwer M.D., Inc. Profit Sharing Plan, the Debtor and his counsel refer to the Plan as a Pension Plan. The legislative history of C.C.P. § 704.115 lends no assistance in determining, beyond the name of the plan, what distinguishes a private retirement plan from a profit sharing plan. For purposes of analysis, the distinction, is moot since under either type of plan, in order to be entitled to exemption under California law, the plan must be designed and used for retirement purposes. *See In re Bloom*, 839 F.2d 1376, 1378 (9th Cir.1988).

**12.** Curiously, the California legislature fully exempted private retirement plans and profit-sharing plans from the reach of creditors despite exempting self-employed retirement plans and individual retirement annuities or accounts provided for in the Internal Revenue Code only to the extent necessary to provide for the support of the judgment debtor as well as the debtor's spouse and dependents.

individuals. Also, the Debtor has not made any contributions to the Plan within the last six years. Therefore, unlike the debtor in *Daniel*, it cannot be said that this Debtor attempted to hide otherwise ineligible assets from bankruptcy administration nor can it be said that this Debtor's transactions were not in furtherance of legitimate long-term retirement purposes. *Daniel*, 771 F.2d at 1358. In sum, this Court finds that the Debtor did not cease to treat his Plan as a retirement plan. As the Debtor's Plan was designed and used for retirement purposes the Plan corpus may be entirely exempt under C.C.P. § 704.115.

## III. CONFLICTING PUBLIC POLICY

The Code is intended to provide a debtor with a fresh start by not being burdened with pre-petition debts. The Code also attempts to provide an equitable distribution of the debtor's property to creditors. H.R.Rep. No. 595, 95th Cong., 2d Sess. 177–78 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5963, 6138. ERISA's most important purpose is to "... assure American workers that they may look forward, with anticipation, to a retirement with financial security and dignity, and without fear that this period of life will be lacking in the necessities to sustain them as human beings within our society." H.R.Rep. No. 533, 93d Cong., 1st Sess. 9 (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 4647.

In furtherance of this objective, the Supreme Court in *Patterson* gave full effect to ERISA's goal of protecting pension benefits while furthering the important policy underlying ERISA: uniform national treatment of pension benefits. *Patterson*, —— U.S. at ——, 112 S.Ct. at 2250. However, as this case shows, instead of being subject to ERISA, a debtor's plan may, under the Code, be subject to the vagaries of state exemption law. Furthermore, despite the invalidity of an anti-alienation provision the Debtor's Plan assets may still be entirely placed beyond the reach of creditors.

Curiously, instead of exempting plan assets only to the extent necessary to provide for the support of the debtor and the debt-

or's spouse and dependents, the California legislature has authorized full exemption of pension plan assets. This policy choice to entirely safeguard a stream of income for pensioners at the expense of a bankrupt's creditors may be an invitation for debtors to engage in pre-petition exemption planning. Solely in anticipation of putting assets beyond the reach of creditors, a debtor may convert non-exempt property into exempt pension plan assets or borrow on security of non-exempt collateral, reduce the equity available to the estate, and use the loan proceeds for exempt pension plan assets. Either approach frustrates the policy of providing an equitable distribution of the debtor's property to creditors.

Regardless of the inequities that may result from a debtor's use of the California exemption scheme, this Court is constrained by the plain meaning of the statutes in the context of this case. Allowing the Debtor to retain over $1.8 million in retirement benefits in bankruptcy while being discharged from debts legitimately owed to creditors seems fundamentally unfair. However, the overwhelming evidence shows that the Debtor did not engage in inequitable conduct. The Debtor did not convert non-exempt assets into exempt assets on the eve of bankruptcy. In fact, the Debtor did not make any contributions to his pension plan for the past six years. Thus, it can hardly be said that this Debtor engaged in pre-petition exemption planning. However, as C.C.P. § 704.115, fairly construed, allows a debtor to shield assets from creditors, the remedy is for the state legislature to promote creditor objectives rather than for courts to restrict the meaning of an unambiguous state exemption statute.

## IV. CONCLUSION

This Court's review of applicable law compels the conclusion that the Debtor's Profit Sharing Plan is property of the bankruptcy estate under Code § 541(c)(2) but is fully exempted from the estate pursuant to California C.C.P. § 704.115(a)(2).

This memorandum of decision contains this Court's findings of fact and conclu-

sions of law. Counsel for the Debtor shall lodge and serve a proposed order denying the objection to the claim of exemption consistent with this memorandum of decision.