In re Reginald GAUDETTE, Debtor.

Richard R. Erricola, Trustee, Plaintiff,

v.

Reginald Gaudette, Defendant.

Bankruptcy No. 96–12653–MWV.
Adversary No. 97–1096–MWV.

United States Bankruptcy Court,
D. New Hampshire.

June 11, 1999.

Geraldine Karonis, Assistant U.S. Trustee, Manchester, NH, for UST J. Christopher Marshall.

William S. Gannon, Wadliegh, Starr & Peters, P.L.L.C., Manchester, NH, Thomas J. Raftery, Carlisle, MA, for plaintiff.

Joseph A. Foster, Ralph Holmes, McLane, Graf, Raulerson & Middleton P.A., Nashua, NH, Marc L. Van De Water, Thomas, Utell, Van De Water & Raiche, Manchester, NH, for defendant.

## *MEMORANDUM OPINION*

MARK W. VAUGHN, Chief Judge.

The Court has before it the Plaintiff's Request for Ruling, which seeks a determination that the Debtor's pension plan, the OFS Pension Plan and Trust ("OFSPPT" or "Plan"), is not a qualified pension plan under the Employee Retirement Income Security Act of 1974 ("ERISA"). For the following reasons, the Court grants the Plaintiff's request and finds that the OFSPPT is not a pension plan subject to ERISA and is therefore property of the estate under section 541 of the Bankruptcy Code.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## *FACTS*

This matter is before the Court for a decision based upon the following thirty-nine stipulated, verbatim facts from Exhibit A of the parties' Joint Final Pretrial Statement:

1.  Reginald L. Gaudette of 7 Virginia Court, Hooksett, New Hampshire, is the Debtor herein.

2.  On September 23, 1996 (the "Petition Date"), Reginald Gaudette filed a petition under Chapter 7 commencing this bankruptcy case.

3.  Louise Gaudette of 7 Virginia Court, Hooksett, New Hampshire, is the spouse of Reginald.

4.  Lionel Gaudette and Edith Gaudette of 1235 West River Drive, Margate, Florida, are Debtor's mother and father.

5.  On March 6, 1972, Gaudette Associates, Inc. ("GAI") was incorporated as a New Hampshire corporation.

6.  Upon the establishment of GAI, Lionel Gaudette was the President and majority shareholder, and Reginald Gaudette was the Vice President and minority shareholder. In the first year of GAI'S operation, Lionel Gaudette and his spouse, Edith Gaudette, each owned 43.75% of the corporation and Reginald owned 12.5%.

7.  On May 15, 1973, GAI established the Gaudette Associates, Inc. Pension Plan and Trust ("GAIPPT").

8.  GAIPPT was established during the period when Lionel and Edith Gaudette were the majority shareholders of GAI.

9.  According to Schedule A to the 1973 IRS Form 4848 (Page 2, Section 15), GAIPPT received an IRS favorable determination letter as to its tax qualified status under the Internal Revenue Code on June 20, 1973.

10.  Effective May 15, 1976, the GAIPPT form of pension plan was amended to effect interim compliance with ERISA and the Internal Revenue Code as amended.

11.  By amendment executed August 25, 1977, the GAIPPT was further amended to effect compliance with ERISA and the Internal Revenue Code as amended, and the Amendment received a favorable determination letter from the IRS dated May 16, 1977.

12.  Effective December 1, 1984, the GAIPPT was further amended, which amendment received a favorable determination letter from the IRS dated March 25, 1986.

13.  The only beneficiary of GAIPPT was Reginald Gaudette.

14.  The President and majority shareholder of the company, Lionel Gaudette, was a seasonal employee,

and therefore not eligible to participate under the Plan.[1]

15. As part of an installment buy-out of GAI, Reginald and Louise Gaudette jointly purchased incremental units of stock in GAI.

16. In 1987, Reginald and Louise Gaudette sold their stock in GAI to Tom and Roseanne Hussey.

17. After the stock sale, GAI was still responsible for the continuation and maintenance of GAIPPT.

18. GAI failed to file the required IRS Form 5500 Annual Return on behalf of GAIPPT for the fiscal years ending 11/30/88 and 11/30/89.

19. The IRS Form 5500 for the fiscal years ending November 30, 1988 and November 30, 1989, were filed by GAI in 1991.

20. According to the Form 1120 Corporate Tax Returns filed for GAI during the period 11/30/73 through 11/30/84, and the Annual Returns filed on behalf of the Pension Plan to the IRS for plan years 11/30/74, 11/30/75, 11/30/78, 11/30/81, 11/30/84, 11/30/87, 11/30/90 and 11/30/91 and 1992 5500, 1993 5500, 1994 5500, and 1995 5500, the history of employer contributions to the GAI Pension Plan, and its asset values for the stated years, was reported as follows:

| DATE | CONTRIBUTION | PLAN ASSETS |
| --- | --- | --- |
| 11/30/73 | $ 2,900.00 | Not Known |
| 11/30/74 | $ 2,900.00 | Not Known |
| 11/30/75 | $ 2,900.00 | $ 5,690.00 |
| 11/30/76 | $ 2,900.00 | Not Known |
| 11/30/77 | $ 4,800.00 | Not Known |
| 11/30/78 | $ 6,200.00 | $ 22,283.00 |
| 11/30/79 | $ 6,280.75 | Not Known |
| 11/30/80 | $ 6,517.53 | Not Known |
| 11/30/81 | $ 9,243.75 | $ 52,760.00 |
| 11/30/82 | $ 8,250.00 | Not Known |
| 11/30/83 | $10,602.00 | Not Known |
| 11/20/84 | $11,661.50 | $114,205.00 |

| DATE | CONTRIBUTION | PLAN ASSETS |
| --- | --- | --- |
| 11/30/85 | Not Known | Not Known |
| 11/30/86 | Not Known | Not Known |
| 11/30/87 | $ 5,000.00 | $271,115.00 |
| 11/30/90 | $ 0.00 | $345,549.00 |
| 11/30/91 | $ 0.00 | $314,024.00 |

(At this point the assets were transferred to OFSPPT)

| | | |
| --- | --- | --- |
| 12/31/92 | $ 0.00 | $314,024.00 |
| 12/31/93 | $ 0.00 | $341,352.00 |
| 12/31/94 | $ 0.00 | $378,497.00 |
| 12/31/95 | $ 0.00 | $430,675.00 |

21. On or about November 22, 1988, Office & Financial Service ("OFS") was established as a New Hampshire corporation.

22. During 1989, OFS established the OFS Pension Plan and Trust ("OFSPPT").

23. During 1991, all the assets of GAIPPT were transferred to OFSPPT.

24. The value of the assets transferred to OFSPPT in 1991 was $314,024.00.

25. The present value of the assets in the OFSPPT is approximately $592,000.00.

26. On or about November 26, 1991, OFS changed its name to LLG Services Corporation ("LLG").

27. As of January 1, 1992, OFSPPT was amended.[2]

28. LLG (f/k/a OFS) is and has been the only sponsor of the OFSPPT.

29. LLG (l/k/a OFS) is and has been the only administrator of the OFSPPT.

30. From its inception through August 1, 1996, Reginald Gaudette was the sole trustee of OFSPPT.

31. On and after August 1, 1996, Louise Gaudette was and is the sole trustee of OFSPPT.

32. The only beneficiary of OFSPPT was and is Reginald Gaudette.

1. Attorney Cleveland testified on April 8, 1998, that the Debtor's father, Lionel Gaudette, was not eligible to "participate" under the OFSPPT because he was a seasonal, part-time employee.

2. (Pl.'s Ex. 1, no. 3.)

33. At all times relevant hereto, Louise Gaudette was and is the sole shareholder of LLG.

34. At all times relevant hereto, Reginald Gaudette was the president and treasurer of LLG.

35. At all times relevant hereto, Reginald Gaudette was the sole director of LLG.

36. The form of the OFSPPT is known as a Prototype Standardized Money Purchase Plan and Trust (the "Northwestern Plan Form") prepared by The Northwestern Mutual Life Insurance Company for adoption by sponsoring employers.

37. Pursuant to a letter from the Internal Revenue Service ("IRS") dated July 10, 1990, the Northwestern Plan form was deemed by the IRS to be a qualified Pension Plan in form under Section 401 of the Internal Revenue Code of 1986. (IRS Letter Serial No.: D248455a).

38. In 1992, the Northwestern Plan Form was amended which amendments also received a favorable determination letter from the IRS dated January 21, 1993 (IRS Letter Serial No.: D248455b).

39. The OFSPPT contains the non-alienation clause required under Section 206(d)(1) of ERISA, as further codified under Section 401(a)(13) of the Internal Revenue Code.

(Joint Final Pretrial Statement, Ex. A; Pl.'s and Def.'s Ex. 1.) Plaintiff's Exhibit 101 and Defendant's Exhibit 1 were admitted into evidence at hearing on April 8, 1998; Defendant's Exhibit 1 is a binder of exhibits which supports the stipulated facts. Exhibit 101 is a Power of Attorney executed by Louise Gaudette on October 4, 1986, which grants a power of attorney to her husband, Reginald Gaudette, and which states that he may:

> act as my attorney or agent in relation to all matter[s] in which I may be interested or concerned and on my behalf to execute any document and to do anything effectually in my name, place and stead as if I were present.

(Pl.'s Ex. 101.)

### DISCUSSION

■ The Plaintiff's Request for Ruling and Memorandum of Law ("Plaintiff's Request") seeks a determination that: (1) the OFS Pension Plan and Trust ("Plan"), a pension plan established by OFS Lending, Inc., is not an "ERISA-qualified" plan; and (2) the Debtor's interest in funds of the Plan, upon which the Debtor has claimed an exemption under Schedule C,[3] is property of the estate pursuant to section 541 of the Bankruptcy Code.[4]

---

3. Schedule C of the Debtor's schedules claims his interest in the Plan is exempt pursuant to 29 U.S.C. § 1036(d)(1) and (2) and N.H.Rev. Stat.Ann. § 512:21(V). However, if the Plan is not property of the estate under section 541, the Debtor's exemption claim is superfluous. Further, at the hearing on April 8, 1998, Plaintiff's counsel informed the Court that the only issue before it was whether the assets of the pension plan were property of the estate. Thus, this memorandum opinion will not address whether, and to what extent, the Debtor's claimed exemptions affect the outcome of today's decision.

4. Section 541(c)(1) and (2) of the Bankruptcy Code state, in pertinent part:

> (1) Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection (a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—
>
> . . . .
>
> (2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

11 U.S.C.A. § 541(c)(1) and (2) (1988).

I. *Whether the Plan is "ERISA-qualified".*

In *Patterson v. Shumate*, 504 U.S. 753, 765, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), the Supreme Court held that "a debtor's interest in an ERISA-qualified pension plan may be excluded from the property of the bankruptcy estate pursuant to § 541(c)(2)." It also read the phrase "applicable nonbankruptcy law" in section 541(c)(2) to apply by its plain meaning to both state and federal law, *id.* at 759, 112 S.Ct. 2242, and found that the pension plan at issue was qualified under the Internal Revenue Code ("I.R.C." or "IRC"), 26 U.S.C. § 401(a)(13),[5] and subject to ERISA, in that it contained an anti-alienation provision.[6] *Id.* at 759–60, 112 S.Ct. 2242. Notably absent from the Supreme Court's opinion, however, was a definition of the term "ERISA-qualified." *See Patterson*, 504 U.S. 753, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992). Since 1992, courts' interpretations of "ERISA-qualified" plans have included one to four of the following features:

(1) plans which are subject to ERISA;

(2) plans which are subject to I.R.C. § 401(a);

(3) plans which contain enforceable anti-alienation clauses; or

(4) plan that have combinations of any of these three features.

*In re Orkin*, 170 B.R. 751, 753 (Bankr. D.Mass.1994) (*citing In re Hall*, 151 B.R. 412, 418 (Bankr.W.D.Mich.1993)) (*quoting* Christy & Skeldon, *Shumate and Pension Benefits in Bankruptcy*, 2 J.Bankr.L. & Prac. 719, 725 (1992)). *Compare In re*

*Hall*, 151 B.R. at 419 (holding that a plan is "ERISA-qualified" if it satisfies both ERISA and the IRC); *In re Sirois*, 144 B.R. 12, 14 (Bankr.D.Mass.1992) (same); *In re Witwer*, 148 B.R. 930 (Bankr. C.D.Cal.1992) (requiring that "ERISA-qualified" plans be created pursuant to the ERISA statutes, the IRC, and include an anti-alienation provision), *aff'd*, 163 B.R. 614 (9th Cir. BAP 1994). *Cf. In re Hanes*, 162 B.R. 733, 740 (Bankr.E.D.Va.1994) (holding that an "ERISA-qualified" plan need not be subject to the IRC, but only contain an anti-alienation provision, and be governed and enforceable under ERISA); *In re Kaplan*, 162 B.R. 684, 691 (Bankr. E.D.Pa.1993) (a plan need only be covered by ERISA to be "ERISA-qualified").

The Plaintiff does not dispute that the Plan is tax qualified and agrees that it contains an anti-alienation provision. Therefore, the Court does not need to address what combination of the above-mentioned features creates an "ERISA-qualified" plan, since if the Court finds that the Plan is not subject to ERISA, the Plan cannot be "ERISA-qualified."

A determination of whether a pension plan is "subject to ERISA" requires a fair amount of statutory recital. In order to receive benefits under the Plan, the Defendant must be a "participant":

The term "participant" means any *employee or former employee of an employer*, or any member or former member of an employee organization, who is or may become eligible to receive a benefit or any type from an employee benefit plan which covers employees of such

5. Section 401(a)(13) of the Internal Revenue Code states, in pertinent part, that:
(a) **Requirements for qualification.**—A trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees of their beneficiaries shall constitute a qualified trust under this section—
(13) **Assignment and alienation.**—
(A) **In general.**—A trust shall not constitute a qualified trust under this section

unless the plan of which such trust is a part provides that benefits provided under the plan may not be assigned or alienated.... 26 U.S.C.A. § 401(a)(13) (1986 & Supp. 1999).

6. ERISA section 1056(d)(1), "Form and payment of benefits[,]" states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." 29 U.S.C.A. § 1056(d)(1) (1994).

employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C.A. § 1002(7) (1994). The Plaintiff alleges the Defendant is not a "participant" under this previously mentioned section, as well as under sections 1132(a)(1)(B),[7] 1002(6),[8] and 1002(5) because he is an "employer." Section 1002(5) states:

> The term "employer" means any person acting directly as an employer, *or indirectly in the interest of an employer*, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity.

29 U.S.C.A. § 1002(5) (1994) (emphasis added). A "person" is defined as "an *individual*, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization." 29 U.S.C. § 1002(9) (1994) (emphasis added). Finally, in the First Circuit, and in many others, the most elementary requirement of ERISA is section 1103(c)(1), which mandates that "the assets of a plan *shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan* and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C.A. § 1103(c)(1) (1994) (emphasis added). No plan can be "subject to

ERISA" without satisfying this statutory requirement.

In *Kwatcher v. Massachusetts Serv. Employees Pension Fund*, 879 F.2d 957 (1st Cir.1989), the First Circuit held that a sole shareholder was an "employer" and that he was not entitled to receive any portion of the pension funds for work he performed prior to becoming an "employer." The First Circuit noted that the sole shareholder was "chief officer, [and] oversaw hiring, firing and employee discipline; executed contracts ... and represented the company in collective bargaining." *Id.* at 958. Designating the sole shareholder as a "dual status" person, the court also noted that a majority of courts bar these "owners" from participation in ERISA plans. *Id.* at 959 (*citing Peckham v. Board of Trustees, Etc.*, 653 F.2d 424, 427 (10th Cir.1981) *(Peckham I)*; *McHugh v. Teamsters Pension Trust Fund*, 638 F.Supp. 1036, 1043–44 (E.D.Pa.1986); *but see Dodd v. John Hancock Mut. Life Ins. Co.*, 688 F.Supp. 564, 571 (E.D.Cal.1988) (contra)). The First Circuit unequivocally stated that " 'employee' and 'employer' are plainly meant to be separate animals; under Part I,[9] the twain shall never meet." *Kwatcher*, 879 F.2d at 959. It also stated, and the Court quotes this passage in full because it speaks loud and clear to the instant case,

> [w]hen an *individual dominates the actions of a corporate entity* —and who rules the corporate roost more single-handedly than a sole shareholder doubling in brass as the firm's chief execu-

---

**7.** Section 1132(a)(1)(B) states:
(a) Persons empowered to bring a civil action
A civil action may be brought—
(1) by a participant or a beneficiary—
....
(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan....
29 U.S.C.A. § 1132(a)(1)(B) (1994).

**8.** This section states that "[t]he term 'employee' means any individual employed by an em-

ployer." 29 U.S.C.A. § 1002(6) (1994). The Supreme Court remarked that this definition "is completely circular and explains nothing." *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) (Souter, J.).

**9.** Part I of ERISA, also referred to as Title I, is comprised of the statutes in 29 U.S.C. §§ 1001–1168, which are ERISA's provisions governing plan fiduciaries, participants and beneficiaries and reporting, disclosure and funding of plans.

tive and principal operating officer?—it seems fair to acknowledge the *actuality of the situation:* such an individual assuredly acts "in the interest of" the corporation. He is thus subject to classification as an "employer." The rest follows inexorably. Once a person has been found to fit within the "employer" integument, ERISA prohibits payments to him from a qualified plan. . . . Since Kwatcher is an "employer" under 29 U.S.C. § 1002(5), pension payments to him would "become of advance to [an] employer," thereby violating the law.

*Id.* at 960 (internal citations omitted) (emphasis added); *see also First Options of Chicago, Inc. v. Kaplan (In re Kaplan),* 162 B.R. 684, 694 (Bankr.E.D.Pa.1993) (finding that a debtor who was a minority shareholder when his pension plan was sponsored but who later became the sole shareholder, and was president of the sponsoring company and trustee of the plan, was an "employer" under ERISA); *In re Pruner,* 140 B.R. 1, 4 (M.D.Fla.1992) (reversing bankruptcy court's decision, without oral argument or an evidentiary hearing, that the debtor was not an "employer" and holding that he was because of three enumerated sets of stipulated, "critical" facts: (1) the debtor was the "employer, settlor, trustee, administrator and sole beneficiary of the Plan"; (2) the debtor had not been employed by any other individual since the plan's inception; and (3) the debtor was the plan's only participant).

When GAI was established, the Defendant was the vice president and minority shareholder. *See e.g., Welsh v. Quabbin Timber, Inc.,* 943 F.Supp. 98 (D.Mass. 1996) (absentee, 50% owner officer of company was an "employer," and not an "employee" under ERISA). When GAI established the pension plan, GAIPPT, the Defendant was the only beneficiary and was also the plan fiduciary. (*See* Pl.'s Ex. 1, no. 13, Form 5500–C, 1986 Return/Report of Employee Benefit Plan.) He also signed the Adoption Agreement for the GAIPPT as its president and trustee (Pl.'s Ex. 1, no. 29.), and is listed as the Plan's agent for service of legal process (Pl.'s Ex. 1, no. 30.). Although the Defendant's wife has been the sole shareholder of LLG Services Inc., the sponsor of the OFSPPT (into which the assets of GAIPPT were transferred in 1991), the Defendant was the president (*see* Pl.'s Ex. 1, no. 20), vice president (*see* Pl.'s Ex. 1, no. 3), treasurer, secretary (*see* Pl.'s Ex. 1, no. 20) and director of the LLG Services, Inc. until he resigned on or about August 1, 1996, approximately one and a half months before the Defendant filed Chapter 7.[10] (*See* Petition, Statement of Affairs, at 6.) The Defendant was also the sole trustee and beneficiary until his wife took over the trustee position on or about August 1, 1996. (*See* Pl.'s Ex. 1, no. 3.) Further, the signature page of the Adoption Agreement and Declaration/Registration Form[11] is signed as follows: "Employer: LLG Services Corp. By: Reginald Gaudette" and "Additional Participating Employer: Reginald Gaudette[.]" (Pl.'s Ex. 1, no. 6.)[12] Additionally, the pension plan defines "employer" as "the entity specified in the Adoption Agreement[,]" i.e., Reginald Gaudette. (Pl.'s Ex. 1, no. 7.) The Defendant's name also appears on the 1992, 1993, 1994, and 1995 tax returns for the Plan, Forms 5500–C/R, for LLG Services Corporation on the line designated for the "employer/plan sponsor" and "plan administrator[.]" (Pl.'s Ex. 1, nos. 14–17.)[13]

---

**10.** The corporate address is the Debtor's home address. (*See* Pl.'s Ex. 1, nos. 2, 5.)

**11.** The full document title is the Adoption Agreement and Declaration/Registration Form for the Northwestern Mutual Life Insurance Company Prototype Standardized Money Purchase Plan and Trust. (Pl.'s Ex. 1, no. 6.)

**12.** This is the document which also contains Reginald Gaudette's signature as trustee. (Pl.'s Ex. 1, no. 6.)

**13.** The Defendant's name also appears on the GAIPPT 1987 tax return as the "employer/plan sponsor" and "plan administrator[.]" (Pl.'s Ex. 1, no. 32.) The Defendant did not

According to the stipulated facts, except for the Defendant's father being a "seasonal employee" of GAI, there were no other employees of GAI, and certainly none of LLG Services, Inc. In other words, these companies are the Defendant clothed in corporate forms. That the Defendant incorporated both GAI and OFS Lending, Inc., later named LLG Services, Inc., and his wife is the sole shareholder of LLG Services, Inc. are two facts that are enormously insufficient to shield the Defendant from *Kwatcher's* edicts.

Further, the Plaintiff's Exhibit 1, which was admitted at hearing on April 8, 1998, along with the book of exhibits to substantiate the parties' stipulated facts, is a Power of Attorney executed on October 4, 1986 by Louise Gaudette granting a broad power of attorney to Reginald Gaudette. Although counsel for the Defendant argued at the April 8, 1998 hearing that the Defendant never acted on this power of attorney,[14] the Court takes judicial notice that Reginald Gaudette by this power of attorney and by his representations has acted "directly as an employer *or indirectly in the interest of an employer*[,]" § 1002(5) (emphasis added), throughout the life of the OFSPPT.

At the April 8 hearing, counsel for the Defendant called Attorney Alan P. Cleveland,[15] who testified that he reviewed the plan and its history (the predecessor plans going back to the GAI plan established in 1973). He also testified that: (1) the "employer/sponsor" of the OFSPPT was LLG Services, Inc.; (2) the "employee" was Reginald Gaudette; and (3) Louise Gaudette

was never an "employee" or a "participant" of either GAIPPT or OFSPPT. However, Reginald Gaudette, as officer, director, trustee, beneficiary, and holding a power of attorney is, as counsel for the Plaintiff stated, "everything in this particular pension plan." (Pl.'s Counsel's Closing Argument, Apr. 8, 1998 hearing.)

Thus, the Court has no doubt that the Defendant has been an individual who "dominate[d] the actions" of these companies and who certainly is and has been a "person acting directly as an employer, or indirectly in the interest of an employer, in relation to [the P]lan." § 1002(5). *See also Massachusetts Laborers' Health and Welfare Fund v. Starrett Paving Corp.*, 845 F.2d 23, 26 (1st Cir.1988) (the ERISA definition of "employer" is broad); *Lain v. UNUM Life Ins. Co. of Am.*, 27 F.Supp.2d 926, 932 (S.D.Tex.1998) ("[A] majority of courts, including the Fifth Circuit, follow the reasoning in *Kwatcher v. Massachusetts Serv. Employees Pension Fund*, 879 F.2d 957 (1st Cir.1989), and hold that sole proprietors *and other individuals who dominate the actions of business entities are employers* and therefore not employees of their firms.") (emphasis added); *Trustees of Amalgamated Ins. Fund v. Danin*, 648 F.Supp. 1142, 1146 (D.Mass.1986) (holding that a corporate officer or stockholder may be held personally liable under ERISA even though it would be inappropriate to pierce the corporate veil). Under the *Kwatcher* decision, the Defendant may not be both an employer and employee. Therefore, the Court holds that, under *Kwatcher*: (1) Reginald Gaudette is, in

---

sign the tax returns, but his name is typed in the pertinent signature sections as previously mentioned. The Court particularly notes that these tax returns, however, were submitted by the Defendant.

**14.** Counsel for the Defendant stated that the power of attorney was executed three years before LLG Services Inc. was formed, which does not necessarily aid the Defendant's argument in that this power of attorney was in existence during the life of the OFSPPT and was never dissolved.

**15.** Attorney Cleveland testified that he had substantial experience in pension plans and was retained by Louise Gaudette to evaluate the OFSPPT. The contribution chart which is part of the stipulated facts was created by Attorney Cleveland; however, his expert report, by agreement between the parties, was omitted from the book of exhibits substantiating the stipulated facts.

fact, an employer under § 1002(5); (2) since he cannot be both an "employer" and an "employee," [16] he is not a "participant" under § 1002(7); and (3) Reginald Gaudette is not entitled to any of the pension funds under the GAIPPT to which he may have been entitled prior to becoming an "employer", *Kwatcher*, 879 F.2d 957. Since the Plan is not "subject to ERISA" it is not "ERISA-qualified" and is property of the estate under section 541 of the Bankruptcy Code.

The Court's findings comport with public policy underlying the enactment of Title I of ERISA. The remedial scheme of Title I of the ERISA statutes "was adopted to remedy the abuses that existed in the handling and management of welfare and pension plan assets held in trust for workers in a traditional employer-employee relationship." *In re Witwer*, 148 B.R. at 935–36. Defendant is not a worker in a traditional employer-employee relationship. Like the debtor in *Witwer*, the Defendant "has complete control over both the amount of the assets to be contributed to a profit sharing plan, as well as the content of the plan corpus. Thus, the remedial scheme established by Title I is not necessary" for his protection. *Id.*

Additionally, the Court recognizes those regulations promulgated by the Secretary of Labor [17] which have a direct bearing on the ERISA statutes. Section 2510.3–3(b) and (c)(1) of the Code of Federal Regulations states that:

> (b) Plans without Employees. For purposes of Title I of the Act and this chapter, the term "employee benefit plan" shall include any plan, fund or program, other than an apprenticeship or other training program, under which

no employees are participants covered under the plan as defined in paragraph (d) of this section....

(c) Employees. For purposes of this section:

> (1) An individual and his or her spouse shall not be deemed to be employees with respect to a trade or business, whether incorporated or unincorporated, which is wholly owned by the individual or by the individual and his or her spouse....

29 C.F.R. § 2510.3–3(b) and (c)(1) (1988). In *Darden*, 503 U.S. at 323–24, 112 S.Ct. 1344, the Supreme Court held that the term "employee" must be defined in accordance with federal common-law and employed an eleven-part test from the Second Restatement of Agency § 220(2). However, it is worth noting that the Supreme Court clearly differentiated between the hired and the hiring party—a "conventional master-servant relationship." *Id.* at 322, 112 S.Ct. 1344 (*quoting Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 739–40, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)). Since as the Plaintiff contends, "Reginald Gaudette was everything; there was no one else," (Pl.'s Request at 6), and the Court agrees, the Court finds that there was no "conventional master-servant relationship[,]" *id.*, and reiterates its holding that the Defendant was the "employer."

II. *Conclusion.*

The OFSPPT is not "subject to ERISA" and therefore is property of the estate under section 541 of the Bankruptcy Code. This opinion and order constitutes the Court's findings of facts and conclusions of law in accordance with Federal Rule of Procedure 7052.

---

**16.** The Supreme Court's decision in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323–24, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), held that the term "employee" is term to be defined by the federal common law.

**17.** "... [T]he Secretary [of Labor] may prescribe such regulations as he finds necessary or appropriate to carry out the provisions of

this subchapter...." 29 U.S.C.A. § 1135 (1994); *see Sure–Tan, Inc. v. National Labor Rel's Bd.*, 467 U.S. 883, 891, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984) (regulations are to be afforded considerable deference and a court may not substitute its interpretation in place of a regulation so long as that regulation is "reasonably defensible").